UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL LETVIN and
KEITH PHILLIPS,

       Plaintiffs,                                          Case No. 13-12015

v.                                                                    Paul D. Borman
                                                                      United States District Court
JACK LEW, SHAUN DONOVAN,
FLAGSTAR BANK, FSB, AND
BANK OF AMERICA, NA,

       Defendants.

_____/

OPINION AND ORDER:
(1) GRANTING DEFENDANT FLAGSTAR BANK, FSB'S
MOTION FOR SUMMARY JUDGMENT (Dkt. No. 20); AND
(2) GRANTING DEFENDANT BANK OF AMERICA, N.A.'S MOTION FOR SUMMARY
JUDGMENT (Dkt No. 24)

Plaintiffs Michael Letvin and Keith Phillips filed their original class action complaint on

May 6, 2013.  (Dkt. No. 1).  On June 19, 2013, Plaintiffs filed a corrected Amended Complaint.

(Dkt. No. 7).  Plaintiffs assert claims on behalf of themselves and others similarly situated against

Defendants Jack Lew (the Secretary of Treasury), Shaun Donovan (the Secretary of HUD), Flagstar

Bank, FSB ("Flagstar") and Bank of America, N.A., successor by merger to BAC Home Loans

Servicing, L.P., formerly known as Countrywide Home Loans Servings, L.P. ("BANA").  Plaintiffs

have failed to pursue any prosecution of Jack Lew or Shaun Donovan, ("Government Defendants").

Before the Court are Flagstar's Motion to Dismiss (Dkt. No. 20) and BANA's Motion to

Dismiss (Dkt. No. 24).  Plaintiffs' sought an extension of time to respond to the motions on October

31, 2013.  (Dkt. No. 27).  That motion was granted and Plaintiff was given until November 18, 2013

to file responses to both motions to dismiss.  (Dkt. No. 28).  On January 12, 2014, Plaintiffs filed

an extremely tardy and overly long consolidated response. (Dkt. No. 32). Both Defendants filed

reply briefs.[1] (Dkt. Nos. 29 & 30). A hearing on this matter was held on Thursday, May 15, 2014.[2]

A hearing on this matter was held on Thursday, May 15, 2014. As explained at the hearing,

while Plaintiffs' response brief was struck from the record for its lack of timeliness, the Court did

read and consider that brief in preparation for both the hearing and the rendering of this opinion and

order.

## I. BACKGROUND

A.     Michael Letvin

Plaintiff Letvin purchased a home located at 9180 Tanbay Street, Commerce Township,

Michigan, 48382 (the "Property"). (Am. Compl. ¶ 7). Plaintiff Letvin purchased the home on June

29, 2008 and executed a $49,608.00 note to Flagstar and granted a mortgage to Mortgage Electronic

Registration Systems, Inc. ("MERS") as nominee for Flagstar. (Flagstar Br., Ex. A, Sheriff's Deed).

Sometime thereafter, Plaintiff Letvin defaulted on his mortgage payments and Flagstar commenced

a foreclosure by advertisement pursuant to Michigan law. Notice of the foreclosure was published

on April 6, April 13, April 20, and April 27, 2011. (Pls.' Br. Ex. A, Affidavit of Publication).

MERs assigned the mortgage to Flagstar which was recorded on April 20, 2011. (Pls.' Br., Ex. A,

---

[1] The Court notes both reply briefs addressed, almost exclusively, the fact that Plaintiffs had failed to respond to the motions to dismiss.

[2] As explained during the hearing on May 15, 2014, while Plaintiffs' response brief was struck from the record for being untimely and too long, the Court did in fact read Plaintiffs' response and consider that brief in preparation for both the hearing and in rendering this opinion and order. Therefore, the Court shall VACATE its previous order which granted Defendants motion to strike Plaintiffs' response (Dkt. No. 34).

Assignment).  Flagstar purchased the Property at a foreclosure sale held on May 10, 2011 for the sum of $54,746.28.  (Flagstar Br., Ex. A, Sheriff's Deed).

Flagstar represents that Plaintiff Letvin did not vacate the Property after the foreclosure sale and, therefore, sometime after the expiration of the redemption period, November 10, 2011, Flagstar sought a judgment of possession against Plaintiff Letvin.  (Flagstar Br. at 1).

On October 20, 2012, Plaintiff Letvin filed for protection under Chapter 13 of the Bankruptcy Code.[3]  *See In re Michael Letvin*, Case No. 12-64049 (Bkr. E.D. Mich.) (Dkt. No. 1). On January 30, 2013, the bankruptcy court lifted the automatic stay as to the Property.  *Id.*, at Dkt. No. 37.

Flagstar represents that it obtained a judgment of possession against Plaintiff Letvin from a Michigan state court on April 26, 2013 which was stayed pending the outcome of this case. (Flagstar Br. at 1 n. 1).

B.      Keith Phillips

On June 12, 2003, Plaintiff Phillips obtained a loan in the amount of $102,600.00 from Shore Mortgage that was secured by a mortgage on a condominium located at 2401 Cardigan, Warren, Michigan 48091 (the "Warren Property").  (Am. Compl. ¶ 8; BANA Br. Ex. A, Mortgage).  The mortgage was duly recorded on September 29, 2003 and Mortgage Electronic Registration Systems, Inc. ("MERS") was the mortgagee solely as nominee for Shore Mortgage and its successors and assigns.  (*Id.*).  The September 26, 2011 assignment of the mortgage from MERS to BANA was recorded on September 30, 2011.  (BANA Br., Ex. B).

---

[3] It appears that Plaintiff Letvin eventually converted his Chapter 13 bankruptcy into a Chapter 7 bankruptcy proceeding.  *In re Michael Letvin*, Case No. 12-64049 (Bkr. E.D. Mich.) (Dkt. No. 30).

Phillips eventually defaulted on the loan triggering a foreclosure by advertisement.  Notice of the foreclosure sale was published on May 15, May 22, May 29, and June 5, 2012 as well as a notice being posted on the door of the Warren Property.  (BANA Br. Ex. C, Sheriff's Deed at 2-3, Publication Affidavit and Evidence of Sale).  On June 15, 2012, BANA purchased the Warren Property for the sum of $97,364.76.  (*Id*. at 1).  The Sheriff's Deed was recorded on June 26, 2012 and the redemption period expired on December 17, 2012.  (*Id*. at 1, 4).

C.     The Complaint

On May 6, 2013, approximately a year after the expiration of the redemption period on his Property, Plaintiff Letvin filed the original complaint in this action against Flagstar, Jack Lew, the Secretary of the Treasury, and Shaun Donovan, the Secretary of HUD.  (Dkt. No. 1).  On June 19, 2013, approximately six months after the redemption period on the Warren Property expired, the Plaintiffs filed a Corrected First Amended Class Action Complaint and Jury Demand ("Amended Complaint") which added Plaintiff Phillips and Defendant BANA as parties.  (Dkt. No. 7).

Plaintiffs allege in their Amended Complaint that Flagstar and BANA violated the HUD servicing guidelines because they did not engage in loss mitigation with the Plaintiffs in violation of 24 C.F.R. § 203.605(a); did not have a face to face meeting with Plaintiffs in violation of 24 C.F.R. § 203.604(b); did not accept partial payments in violation of 24 C.F.R. § 203.556; instructed both Plaintiffs to stop paying their mortgage payments "in violation of the Pre-foreclosure Sale ("PFS") policies of HUD"; and both BANA and Flagstar made a "full credit bid" in excess of the fair market value "making it impossible for the Named Plaintiff to redeem the property" which violates the "spirit" of 24 C.F.R. § 203.500.  (Am. Compl. ¶¶ 29-34).

In Count I of the Amended Complaint Plaintiffs set forth their "class action allegations"

4

asserting that unspecified federal policies that allow foreclosing lenders to buy foreclosed properties for a "full credit bid" in excess of the fair market value of the foreclosed property: (1) constitute policies that are arbitrary and capricious and (2) violate the equal protection clause of the Fourteenth Amendment of the Unites States Constitution. (Am. Compl. ¶ 39). Plaintiffs claim to bring the action on behalf of the following class:

> All persons who owned a home that was foreclosed upon whereby the foreclosing lender made a full credit bid in excess of the fair market value of the home in order to collect insurance and/or other government funds and whereby, as a result, the homeowner was unable to purchase and/or redeem the home for the fair market value.

(Am. Compl. ¶ 37). No class has been certified in this action.

In Count II of the Amended Complaint, Plaintiffs seek declaratory relief against the Government defendants.

In Count III Plaintiff Letvin seeks "equitable relief" against Flagstar and requests the foreclosure be set aside and he be allowed to seek a loan modification or be allowed to purchase the property for the fair market value. (Am. Compl. ¶ 54). Plaintiff Letvin also alleges that he "is the victim of the arbitrary and capricious policies of the Government." (*Id*. ¶ 53). Plaintiff Phillips asserts an identical claim of "equitable relief" against BANA in Count IV. (*Id*. at ¶¶ 55-57).

In Count V of the Amended Complaint Plaintiffs assert a § 1983 claim against the Government defendants as well as against BANA and Flagstar. (Am. Compl. ¶¶ 58-71). Plaintiffs claim that each defendant wrongfully foreclosed on the foreclosed properties violating the Troubled Assets Relief Program ("TARP"), 12 U.S.C. § 5201 and the equal protection clause of the Fourteenth Amendment. (Am. Compl. ¶ 60).

## II. STANDARD OF REVIEW

5

Federal Rule of Civil Procedure 12(b)(6) allows for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted.  When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).  But the court "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)).  "[L]egal conclusions masquerading as factual allegations will not suffice." *Eidson v. State of Term. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

The Supreme Court explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level...." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).  Dismissal is only appropriate if the plaintiff has failed to offer sufficient factual allegations that make the asserted claim plausible on its face.  *Id.* at 570.  In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) the Supreme Court clarified the concept of "plausibility" stating:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557 (brackets omitted).

*Id*. at 678.  A plaintiff's factual allegations, while "assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to

6

relief." *LULAC v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Twombly*, 550 U.S. at 555-556). Thus, "[t]o state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *Bredesen*, 500 F.3d at 527 (citing *Twombly*, 550 U.S. at 562).

In addition to Plaintiffs' allegations in their complaint, the Court will consider these documents attached to BANA and Flagstar's motions and Plaintiffs' response and referenced in the pleadings: Plaintiff Phillips' Note, Mortgage, Assignment of Mortgage, and Sheriff's Deed, as well as Plaintiff Letvin's Sheriff's Deed, Assignment of Mortgage and the docket and filings in his related bankruptcy case. Although these documents are outside the pleadings, the Sixth Circuit has recognized that a lower court "may consider any matter of which a court may take judicial notice without converting a party's motion to dismiss into a motion for summary judgment." *Weiner v. Klais and Co., Inc*., 108 F.3d 86, 88 (6th Cir. 1997). Further, the "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in a plaintiff's complaint and are central to her claim." *Id*. at 89. In a motion to dismiss, a court may also rely upon matters of public record. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007); *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). As the Note, Mortgage and Sheriff's Deed are central to Plaintiffs' Amended Complaint and matters of public record, these documents will be considered by the Court in evaluating the Defendants' Motions to Dismiss.

### III. ANALYSIS

Both BANA and Flagstar (collectively the "Banks") filed motions to dismiss alleging that Plaintiffs' claims under 42 U.S.C. § 1983 fail for multiple reasons including the fact that neither

bank was operating "under the color of state law". Both BANA and Flagstar also seek to dismiss Plaintiffs' claims for "equitable relief" against the Banks because the claims fail to allege sufficient facts to set forth a claim.

A.    Section 1983 Claims (Count V)

Plaintiffs allege that the Banks "were acting under color of law" when then "wrongfully foreclosed" on Plaintiffs' properties by violating the Troubled Assets Relief Program, 12 U.S.C. § 5201, et seq. ("TARP") and the Equal Protection clause of the Fourteenth Amendment.[4]  (Am. Compl. ¶ 60).  Plaintiffs argue that the Banks' actions of buying homes in foreclosure for "full credit bids" violated the "equal protection clause of the 14th Amendment as it discriminates against homeowners such as Plaintiffs and prevents them from purchasing and/or redeeming their homes at fair market value in connection with or following a mortgage foreclosure."  (Am. Compl. ¶ 61). Plaintiffs then go on to claim that the Banks also violated a laundry list of other federal and state statutes including: United States Housing Act of 1937, 42 U.S.C. § 1437, *et seq.*; the National Housing Act, 12 U.S.C. § 1701 *et seq.*; 24 C.F.R. §203.500.  Plaintiffs also allege that the Banks violated certain HUD servicing guidelines because: (1) they did not engage in loss mitigation in a

---

[4] To the extent Plaintiffs appear to argue that their § 1983 claim is premised on a violation of TARP, this claim is without any merit.  First, Plaintiffs fail to allege any facts regarding this claim beyond a vague reference to it in paragraph 61 of their complaint. Therefore, the Court finds that Plaintiff has failed to meet the low threshold of Federal Rule of Civil Procedure 8 and failed to allege any facts that would make this claim plausible on its face. *See Twombly*, 550 U.S. at 555.  Further, it is well settled that TARP does not afford an express or implied right of action.  *See Hart v. Countrywide Home Loans, Inc.*, 735 F. Supp. 2d 741, 748 (E.D. Mich. 2010); *Meyer v. Citimortgage, Inc.*, No. 11-13432, 2012 WL 511995, at *6 (recognizing the same); *see also Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 558 n. 4 (7th Cir. 2012) (summarizing the types of claims brought based on Home Affordable Mortgage Program, 12 U.S.C. § 5219(a), part of TARP, noting "Courts have uniformly rejected these claims because HAMP does not create a private federal right of action for borrowers against servicers" and collecting cases).

timely fashion (24 C.F.R. § 203.605(a)); (2) failed to have a face-to-face meeting with the Plaintiffs (24 C.F.R. § 203.604(b)); (3) did not accept partial payments (24 C.F.R. § 203.556); and (4) instructed Plaintiff to stop paying on the mortgage loan in violation of the "Pre-foreclosure Sale [] polices of HUD".[5]  (Am. Compl. ¶ 62).  Plaintiffs also claim that the Banks violated the Michigan Foreclosure by Advertisement Statute by not "complying with the loan modification process, not properly publishing the foreclosure notice, and not properly notifying Plaintiff about the foreclosure sale."[6]  (Am. Compl. ¶ 63).  Finally, Plaintiffs assert the Banks violated MICH. COMP. LAWS § 600.3228 which allows a lender to purchase a foreclosure property for fair market value.  (Am. Compl. ¶ 64).

To state a claim pursuant to 42 U.S.C. § 1983, "a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law."[7]  *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006)).  "[T]he party charged with the deprivation must be a person who may fairly be said to be a state actor."  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).  Therefore, "a private entity can be held to constitutional standards when its actions so approximate

---

[5] It is also well settled law that there is no private cause of action pursuant to any HUD regulation.  *See Fed. Nat. Mortgage Ass'n v. LeCrone*, 868 F.2d 190, 193 (6th Cir. 1989) (holding "no express or implied right of action in favor of the mortgagor exists for violation of HUD mortgage servicing policies.").

[6] To the extent Plaintiffs allege a §1983 claim based on a violation of the Michigan foreclosure statutes, the Court finds Plaintiffs have failed to set forth enough facts in their Amended Complaint (see discussion *infra*) to make any of those claims plausible on their face.

[7] The Court notes that to the extent Plaintiffs are attempting to assert a claim against the Banks attributable to the federal government, such claim would properly assert a violation of the Fifth Amendment (not the Fourteenth, which relates to *state* action).

9

state action that they must be fairly attributed to the state." *Lansing v. City of Memphis*, 202 F.3d 821, 828 (6th Cir. 2000).

"[A] private entity can be held to constitutional standards when its actions so approximate state action that they may be fairly attributed to the state." *Id.* at 828 (citation omitted). To determine when this occurs the Sixth Circuit employs three tests: (1) the public function test; (3) the state compulsion test; and (3) the nexus test. *Id.* (citing *Brentwood Academy v. Tenn. Secondary School Athletic Ass'n*, 180 F.3d 758, 763 (6th Cir. 1999)). The "public function test requires that the private entity exercise powers which are traditionally exclusively reserved to the state, such as holding elections or eminent domain." *Id.* (citation and internal quotation marks omitted). The state compulsion test "requires that a state exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state." *Id.* at 829 (citation and internal quotation marks omitted). Finally, the nexus test mandates that "the action of a private party constitutes state action when there is sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself." *Id.* at 830 (citation and quotation marks omitted).

The Court finds that Plaintiffs' § 1983 claim fails because the Banks were not acting under the color of state law and Plaintiffs' basis for the violations, the "full credit bid" theory, has been rejected by courts in this district and Michigan courts.

1.    Defendants Acting under Color of State Law

The United States Court of Appeals for the Sixth Circuit has noted that "a determination as to whether the defendant acted under the color of state law is a threshold matter." *Wilkerson v.*

*Warner*, 545 Fed. App'x 413, 419 (6th Cir. 2013) (citing *Waters v. City of Morristown*, 242 F.3d 353, 359 (6th Cir. 2001)).  Both BANA and Flagstar argue that Plaintiffs' § 1983 claim must fail because the Banks were not "acting under the color of state law" and the Court agrees.

It is unclear from Plaintiffs' Amended Complaint exactly how Plaintiffs contend the Banks are "state actors" in regards to the foreclosure and purchase of the foreclosed properties.  It appears that Plaintiffs are attempting to argue in their response that the Banks are "alter egos" of the government.[8]  Plaintiffs' claim that the Banks' actions constituted state action under § 1983 because there was a "sufficiently close nexus" between the actions of the state and Banks such that the Banks and the state or government were alter egos.  Specifically, the Plaintiffs argue that federal involvement in the Banks' actions (through regulations and guidelines) during foreclosures created that close nexus.

In *Northrip v. Federal National Mortgage Association*, 527 F.2d 23 (6th Cir. 1975), the Sixth Circuit evaluated whether there was a sufficiently close nexus between the state and the act of foreclosure when the defendant, the Federal National Mortgage Association ("FNMA"), was "a federally chartered corporation created for the purpose of maintaining a secondary market for home mortgages".  *Northrip*, at 30.  The argument for finding a close nexus was based on "finding state action as a result of the government regulation placed upon FNMA."  *Id*. at 31.  The Sixth Circuit in *Northrip* ultimately determined that the nexus was not sufficiently close, noting that while there was "some, and perhaps even significant, government involvement in, and regulation of, the

---

[8] Plaintiffs' counsel admitted during oral argument the § 1983 claim was "primarily" against the government defendants who remain unserved in this action.  Given this equivocation, it is unclear if Plaintiffs are abandoning this claim.  As the Amended Complaint clearly sets forth a § 1983 claim against the Banks and Plaintiffs addressed this claim in their response, the Court shall still address this claim.

11

workings of FNMA" the power of foreclosure not "imbued with state action" and "[m]ortgage foreclosures through power of sale agreements are not powers of a governmental nature". *Id*. at 31-32.

The Sixth Circuit went on and explained the importance of certain factors when evaluating whether state action exists stating:

> [s]uch a finding [of state action] "hinges on the weighing of a number of variables, principally the degree of government involvement, the offensiveness of the conduct, and the value of preserving a private sector free from the constitutional requirements applicable to government institutions."
>
> If the conduct here was more like that complaint of in *Palmer*, where the state authorized a procedure empowering utility companies to obtain ex parte warrants to enter a home, a more offensive act and one that is generally associated with a power exercised by the sovereign, we would be inclined to find state action. Nor are we here concerned with a case of racial discrimination. ...
>
> In this case too there is value in preserving the private sector free from constitutional requirements.

*Id*. at 33 (internal citations omitted).

The instant action is on all fours with the analysis of FNMA in *Northrip*. Here, Plaintiffs' argument regarding state action is based on the federal regulations regarding foreclosure, *i.e.* TARP, HUD, and the like.[9] However, such an argument fails for the same reasons the court in *Northrip* found federal regulation or involvement (even if significant) did not amount to a sufficiently close nexus to convert the FNMA's actions into "state action". The fact remains that the power of a foreclosure by advertisement is neither a state action nor an action governmental in nature. The Sixth Circuit rejected the theory that a mortgage institution that was still heavily regulated by the

---

[9] As noted previously, Plaintiffs cannot maintain a § 1983 action based on a violation of the HUD guidelines or TARP because neither provides a private right of action.

government constituted a close nexus such that the mortgage institution could be found to be a government actor.  Here, the Court similarly declines to find such a close nexus based on the mere existence of federal regulations or guidelines that regulate a private entity.  As the Sixth Circuit explained in *Northrip*, there is value in keeping the private sector free from constitutional requirements in this area.

For all these reasons, the Court finds Plaintiffs' claim pursuant to § 1983 against the Banks fails to state a claim.

2.      Full Credit Bid Theory

Plaintiffs' § 1983 claim also fails because Plaintiffs' theory that a full credit bid by a bank to purchase a property in foreclosure violates Michigan law is without merit.

Plaintiffs' claim rests upon the theory that lending institutions violate MICH. COMP. LAWS § 600.3228 when purchasing a home in foreclosure for a full credit bid (the amount of indebtedness the owner owed the bidding lending institution) rather than the lower market value of the foreclosed properties.  Section 600.3228 states, in its entirety: "The mortgagee, his assigns, or his or their legal representatives, may, fairly and in good faith, purchase the premises so advertised, on any part thereof, at such sale."  MICH. COMP. LAWS § 600.3228.  Plaintiffs argue that this statute bars a lending institution from "overbidding" the property, (one must presume) because paying more than market value would not be in "good faith."

Recently, in *Bank of America v. Dennis*, the same argument was asserted by the owner of a property purchased by a lender in a Sheriff's sale after a foreclosure by advertisement.   No. 12-11821, 2013 WL 1212602 (E.D. Mich. Mar. 25, 2013).  In *Dennis*, the owners of the property claimed the lending bank overbid at the Sheriff's sale in excess of the fair market value and that such

13

a bid and purchase constituted "bad faith" in violation of MICH. COMP. LAWS § 600.3228 because the bid "was made to trigger the payment of insurance proceeds to make BANA whole, not to promote home ownership." *Id.* at *4. In rejecting this claim, the *Dennis* court noted that in *Pulleyblank v. Cape*, 179 Mich. App. 690, 695 (1989), the Michigan Court of Appeals held that "credit bids higher than the actual value of the property are allowed even when the bid 'effectively precluded the mortgagors from exercising their equity of redemption.'" *Dennis*, at *4 (quoting *Pulleyblank*, at 695); *Washington v. BAC Home Loans Serving, L.P.*, No. 12-12940, 2013 WL 5476023, at *5 (E.D. Mich. Oct. 2, 2013) (rejecting argument that overbidding violates Michigan law and finding no "fraud or irregularity" in connection with foreclosure process); *see also Rubin v. Fannie Mae*, 2012 WL 6000572, at *2 (E.D. Mich. Nov. 30, 2012) (noting that the practice of "overbidding" helps borrowers in foreclosure proceedings because the borrower is no longer liable for the debt.).

The *Dennis* court also relied upon an unpublished case by the Michigan Court of Appeals, *Long v. Federal Home Loan Mortgage Corp.*, No. 297438, 2011 WL 2585984 (Mich. Ct. App., June 30, 2011) to reject the argument based on MICH. COMP. LAW § 600.3228. In *Long*, the plaintiff made a similar argument that a bank's "credit bid" which was higher than the alleged fair market value of the foreclosed property "was contrary to the purpose and intent of the foreclosure by advertisement statutes, MCL 600.3201 *et seq.* because the purpose of the legislation is to sell a home for its actual value through a public auction." *Id.* at 3. The Michigan Court of Appeals rejected this argument outright, holding: "There is no support, statutory or otherwise, for plaintiff's argument that

14

the purpose of the foreclosure statutes is to ensure that homes are sold for their actual value."[10] *Id.* The *Dennis* court then concluded that Michigan courts have rejected the argument that there is statutory support for the theory a property must be sold for market value and "overbidding" would constitute bad faith and is barred by § 600.3228.

In the instant case, just like in *Dennis*, Plaintiffs have asserted that the Banks violated the good faith provision of § 600.3228 by bidding more than the fair market value of the foreclosed properties. This Court rejects this claim for the same reason it was rejected in *Dennis*: "If the statute was intended to require a fair market value bid, as [] plaintiffs assert, it could have expressly provided so." *Dennis*, at *4. The mere fact Plaintiffs have inserted this argument into a § 1983 claim does not change the immutable fact that the Michigan Court of Appeals has rejected the basis of Plaintiffs' theory. Therefore, the Court finds that Count V of Plaintiffs' Amended Complaint for a violation of § 1983 against BANA and Flagstar fails because Plaintiffs' "full credit bid" theory upon which its § 1983 claim is based is without merit.

## B.     Equitable Relief (Counts III & IV)

Plaintiffs assert claims of "equitable relief" against BANA and Flagstar in Counts III & IV. Plaintiffs allege that they are the "victim[s] of the arbitrary and capricious polices of the Government" and ask the Court to "set aside the wrongful non-judicial foreclosure[s]" or allow the Plaintiffs to seek a loan modification or redeem the property at fair market value." (Am. Compl. ¶¶ 53-54; 56-57). It is clear from the Plaintiffs' Amended Complaint and Plaintiffs' counsel's

---

[10] The *Long* court also rejected the plaintiff's argument based on MICH. COMP. LAWS § 600.3280 finding that section 3280 "provides a defense to a mortgagor when property is sold for less than its true value; it is not applicable to sales of property for more than the true value" and that the plaintiff "was not entitled to any relief because he was unable to redeem his home based on the amount of the credit bid." *Long*, at *2.

arguments at the hearing that Plaintiffs are actually seeking to challenge the foreclosure sales and set aside the Sheriff's Deeds.

When Plaintiffs seek to set aside a foreclosure sale, the Court must first address whether Plaintiffs have "made a sufficient showing of 'fraud or irregularity'" in connection with the sheriff's sale of their properties to 'undo the divestment of [the] property.'" *El-Seblani v. Indymac Mortg. Services*, 510 Fed. App'x 425, 429 (6th Cir. 2013) (citing *Houston v. U.S. Bank Home Mortg. Wisc. Servicing*, No. 11-2444, 2012 WL 5869918, at *5 (6th Cir. Nov. 20, 2012)).

Pursuant to Michigan law, a homeowner has a statutory period in which to redeem a property sold at a foreclosure sale.  *See* Mich. Comp. Laws § 600.3236-3240(1).  However, once the redemption period has expired, a former owner's rights in and title to the property are extinguished and the former owner cannot assert claims with respect to the property.  *Collins v. Wickersham*, 862 F. Supp.2d 649, 654 (E.D. Mich. 2012) (citing *Piotrowski v. State Land Office Bd.*, 302 Mich. 179, 187 (1942); *Overton v. Mortg. Elec. Registration Sys., Inc.*, No. 28950, 2009 WL 1507342, at *1 (Mich. Ct. App., May 28, 2009)).  "The law in Michigan does not allow an equitable extension of the period to redeem from a statutory foreclosure sale in connection with a mortgage foreclosed by advertisement and posting of notice in the absence of a clear showing of fraud, or irregularity." *Overton*, 2009 WL 1507342, at *1 (quoting *Schulthies v. Baron*, 16 Mich. App. 246, 247-48 (Mich. Ct. App. 1969)).  "The standards for obtaining such an extension are stringent. Statutory foreclosures will only be set aside if very good reasons exist for doing so." *El-Seblani*, 510 Fed. App'x at 429 (internal quotation marks and citation omitted).  As a result, "[t]he Michigan Supreme Court has held that it would require a strong case of fraud or irregularity, or some peculiar exigency, to warrant setting a foreclosure sale aside." *United States v. Garno*, 974 F. Supp. 628, 633

16

(E.D. Mich. 1997).  The Sixth Circuit has recently explained that the "[w]hether the failure to make this showing is best classified as a standing issue or a merits determination, one thing is clear: a plaintiff-mortgagor must meet this 'high standard' in order to have a foreclosure set aside after the lapse of the statutory redemption period."  *Conlin v. MERS*, 714 F.3d 355, 359-60 (6th Cir. 2013). Further, "[t]he misconduct must relate to the foreclosure procedure itself."  *Id.* at 360 (citations omitted).

Here, the record is clear that the redemption periods expired on both Letvin's and Phillips' foreclosure sales well before this action was ever filed.  Therefore, the Plaintiffs must allege a strong case of fraud or irregularity relating to the foreclosure procedure itself to maintain an action to set aside the foreclosure sales.

1.      Failure to Allege Facts with Any Particularity

To the extent Plaintiffs are attempting to argue the foreclosure should be set aside because of violations of the Michigan foreclosure statutes, failure to follow HUD servicing guidelines, or because the Banks "overbid" at the sale in violation of Michigan law, Plaintiffs fail to allege with any particularity any violations to support such claims.

As to the Michigan foreclosure statutes, the only allegation against Flagstar or BANA regarding violations of Michigan foreclosure statutes is contained in paragraph 63: "Defendants further violated that State of Michigan Foreclosure by Advertisement Statute [] by, *inter alia*, non [sic] complying with the loan modification process, not properly publishing the foreclosure notice, and not properly notifying Plaintiffs about the foreclosure sale."  (Am. Compl. ¶ 63).  This lone allegation fails on its face to set forth a claim based on the violation of a foreclosure statute.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

17

the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

As to Plaintiffs claims that there was fraud or irregularities relating to the foreclosure process based on the Banks alleged failure to follow the HUD servicing guidelines or based on their over bidding practice, Plaintiffs' Amended Complaint is similarly lacking factual development that make these allegations plausible on their face. Indeed, Plaintiffs' Amended Complaint is completely barren of any supporting facts that would lend even the smallest amount of credibility to their claims. Plaintiffs' allegations are so lacking they fail to even reference the date of the Sheriff sales, nor do they set forth *any* facts that would distinguish their foreclosure experience from any other foreclosure that has ever occurred. There are no dates, there is no reference to when the Plaintiffs' defaulted on their individual mortgages, whom they contacted regarding their default, or when the foreclosure process began. In fact, the Amended Complaint is so bereft of facts that the experiences of the two Plaintiffs (who, one would guess, had different experiences as they had different properties and dealt with different banks at different times) are not differentiated from each other. (*See* Am. Compl. ¶¶ 29-35). It appears that Plaintiffs' allegation "is simply a legal conclusion couched as a factual allegation." *Alshaibani v. Litton Loan Serv., LP*, 528 Fed. App'x 462, 465 (6th Cir. 2013) (affirming the dismissal of a breach of contract claim in a mortgage case for failing to set forth any facts beyond a "naked" allegation that the mortgage itself was breached.); *Robinson v. Select Portfolio Serv., Inc*., 522 Fed. App'x 309, 313 (6th Cir. 2013) (affirming dismissal of claim of irregularity in a mortgage action where the complaint contained "nothing but a 'naked assertion' that McDermott 'may have signed the affidavit outside the presence of a notary public.'" (citing *Twombly*, 550 U.S. at 557)).

18

Plaintiffs have failed to allege in their Amended Complaint any fraud or irregularity such that the foreclosure sales should be set aside.  Indeed, their pertinent allegations consist of six brief paragraphs of conclusory statements without any factual development or distinguishment.  Therefore, Plaintiffs' "equitable relief" claims (Counts III and IV) as based on violations of the Michigan foreclosure statutes are dismissed for failure to set forth a claim.

2.      The Claims Fail As a Matter of Law

Alternatively, even if Plaintiffs' equitable relief claims could be construed as setting forth enough facts that could be recognized under the *Iqbal* or *Twombly* standards, these claims are also denied.

First, Plaintiffs attempt to base a claim for wrongful foreclosure on the theory that the Banks' "overbidding" at the foreclosure sale constituted a "fraud or irregularity" such that the foreclosure sales should be set aside.  In rejecting this theory, the Court refers to its previous analysis finding that Plaintiffs' overbidding theory has been rejected by courts in this district (as a basis for a wrongful foreclosure claims) as well as in Michigan courts.  (*See* pages 13-15, *supra*).  Therefore, this claim is denied.

Plaintiffs' claims that the foreclosure sales should be set aside due to fraud or irregularities based on the Michigan foreclosure statutes also fail as a matter of law.  First,  Plaintiff Letvin claims in his response that the foreclosure sale was defective because the assignment of the mortgage from MERs to Flagstar was not recorded until shortly after the first publication relating to the foreclosure.  This claim is without merit because: "If the party foreclosing a mortgage by advertisement is not the original mortgagee, a record chain of title must exist <u>before the date of sale</u> ... evidencing the assignment of the mortgage to the party foreclosing the mortgage." Mich. Comp. Laws §

19

600.3204(3) (emphasis added). Here, there is no question the assignment was recorded prior to the date of sale. Further, to the extent Plaintiff Phillips claims BANA failed to provide him with counseling as required under the foreclosure statute, this claim fails because he cannot establish he suffered any prejudice, discussed *infra*.

Plaintiffs also argue that the Banks' failure to follow the HUD servicing guidelines constitutes a "fraud or irregularity" such that the foreclosure sales should be set aside. The Court rejects this argument for the reason that violations of the HUD servicing guidelines do not give rise to any right of private action. *See Dennis*, at *4 (holding same).

Finally, Plaintiffs' claims that the foreclosure sale should be set aside for fraud or irregularities pursuant to the HUD servicing guidelines fail because this fraud or the irregularities would constitute defects which would render the foreclosure sales voidable (not void). *See Kim v. JP Morgan Chase Bank, N.A.*, 493 Mich. 98, 118 (2012). Since the foreclosure sales would merely be voidable, Plaintiffs must show they were prejudiced by the Banks' alleged failure to follow the HUD regulations, i.e., "that they would have been in a better position to preserve their interest in the property absent defendant's noncompliance with the statute." *Id*. Factors that indicate such prejudice are: (1) "whether plaintiffs were misled into believing that no sale had been had"; (2) "whether plaintiffs acted promptly after they became aware of the facts on which they based their complaint"; (3) "whether plaintiffs made an effort to redeem the property during the redemption period"; (4) "whether plaintiffs were represented by counsel" during the process; and (5) "whether defendant relied on the apparent validity of the sale by taking steps to protect its interest" in the property. *Id*. at 120-21 (Markman, J., concurring) (internal citations and quotations omitted).

Courts in this district have repeatedly recognized that "where plaintiffs have admitted

default, received notice of default, failed to show that they had the funds to outbid the highest bidder at the sale, let alone pay the entire unpaid balance owing on the loan, and showed no attempt to redeem the property, they cannot show how any alleged defects in the notice prejudiced them." *Colyer v. Fed. Home Loan Mortg. Corp.*, Slip Op., No. 13-10425, 2014 WL 1048009, at *5 (E.D. Mich. Mar. 18, 2014) (collecting cases). Plaintiffs' current action suffers from this flaw. Plaintiffs did not allege or argue that they could have outbid the Banks at the foreclosure sale or would have bid at the foreclosure sale if the Banks had not bid. There is nothing in the record indicating that the Plaintiffs even attended the foreclosure sales. Plaintiffs also have not and do not claim that they could have paid off the entirety of their loans at any time in the foreclosure process or in the six months thereafter. Therefore, Plaintiffs cannot show they suffered prejudice from the notice given or from the Banks' "overbidding" at the foreclosure sales as required under *Kim* to set aside the foreclosure sales. Therefore, even if Plaintiffs' claim based on violations of the HUD regulations could constitute "fraud or irregularities" in the foreclosure process, the claims still fail.

## C.     Request to Amend

Finally, Plaintiffs also informally sought leave to amend the Amended Complaint to remedy any pleading deficiencies during oral argument and in their response. Plaintiffs did not state what proposed amendments they would make to their Amended Complaint nor did they file a proposed amended complaint. Federal Rule of Civil Procedure 15(a) states that leave to amend is "freely" granted "when justice so requires". FED. R. CIV. P. 15(a). However, the Court need not give leave to amend when the proposed amendment would be futile, result in undue delay, or is brought in bad faith. *See Murphy v. Grenier*, 406 Fed. App'x 972, 977 (6th Cir. 2011). "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford*

21

*Underwriters Ins. Co.,* 203 F.3d 417, 420 (6th Cir. 2000).

The Court denies Plaintiffs' informal request for leave to amend.  Plaintiffs fail to indicate with any specifics how or what they would amend to cure their Amended Complaint.  Further, Plaintiffs' §1983 claims fail against the Banks as a matter of law and no new factual allegation can cure those deficiencies.  While the Court found that Plaintiffs' "equitable relief" claims suffer acutely from the failure to allege any facts that make the claims plausible on their face as required by *Iqbal* and *Twombly*, the Court also rejects Plaintiffs' equitable relief claims as based on their merits.  Therefore, to the extent Plaintiffs seek to amend their "claims of equity" against the Banks, the Court denies this request as being futile.

For all these reasons, the Court finds Plaintiffs' request for leave to amend is futile and denies it as such.

## IV. CONCLUSION

For all these reasons, the Court GRANTS Defendant Flagstar's Motion to Dismiss (Dkt. No. 20).  Further, the Court also GRANTS Defendant BANA's Motion to Dismiss (Dkt. No. 24).  Further, the Court DENIES Plaintiffs' request for leave to amend their Amended Complaint because such an amendment would be futile.

SO ORDERED.

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  June 24, 2014

22

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on June 24, 2014.

s/Deborah Tofil
Case Manager